UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Marcel Koszkul,<br><br>                    Plaintiff,<br><br>     -against-<br><br>Michelle Carney,<br><br>                    Defendant. | 1:23-cv-06439-JGLC<br><br>Hon. Jessica G. L. Clarke<br><br>**MEMORANDUM OF LAW IN SUPPORT**<br>**OF MOTION TO DISMISS** |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS
*TABLE OF AUTHORITIES* ................................................................................................................ *1*

*PRELIMINARY STATEMENT* ...................................................................................................... *3*

*STATEMENT OF FACTS* ................................................................................................................ *4*

*LEGAL ARGUMENT* ....................................................................................................................... *5*

    **I.    Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to plead sufficient factual allegations.** ............................................................................................... **6**

    **II.    Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because defendant's statements were privileged.** ......................................................................................... **8**

        A.    Defendant's written communication to RIT falls within the common interest qualified privilege............8

            i.    Plaintiff fails to allege malice and therefore fails to overcome the common interest privilege. ..........10

        B.    Defendant's written communication to RIT is absolutely privileged because it was made in the course of a quasi-judicial proceeding. ........................................................................................................11

            i. Plaintiff's reference to *Khan v. Yale University* is misplaced. ................................................................14

    **III.    Plaintiff's complaint should be dismissed for lack of venue.** ................................................... **17**

*CONCLUSION*............................................................................................................................... *17*

## TABLE OF AUTHORITIES

**CASES**

*Allan & Allan Arts v. Rosenblum,* 201 AD2d 136 (2d Dept 1994) .................................................. 12
*Armstrong v. Simon & Schuster*, 85 NY2d 373 (1995) .................................................................... 5
*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................. 5, 6
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 5
*Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................................... 5, 6
*Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d
   Cir. 2005) ................................................................................................................................... 13
*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) ...................................... 6
*Constantine v. Teachers Coll.*, 29 Misc 3d 1214[A], 2010 NY Slip Op 51826[U], *9 (Sup Ct, NY
   County 2010) ............................................................................................................................. 15
*Constantine v. Teachers Coll.*, 93 AD3d 493 (1st Dept 2012) ...................................................... 15
*Garson v. Hendlin,* 141 A.D.2d 55, 532 N.Y.S.2d 776 (2nd Dept 1988) ..................................... 10
*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ................................................................................ 5
*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,* No. 06 Civ. 1260, 2009 U.S. Dist.
   LEXIS 111675, 2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ..................................................... 7
*Hodges v. Lutwin*, 595 F. Supp. 3d 12 (S.D.N.Y. 2022) ........................................................ 5, 8, 9
*Karedes v. Ackerley Group, Inc*., 423 F.3d 107, 113 (2d Cir. 2005) ............................................... 6
*Kasachkoff v. City of New York,* 107 A.D.2d 130, 485 N.Y.S.2d 992 (1st Dept 1985) ............... 11
*Khan v. Yale Univ.*, 27 F.4th 805, 809 (2d Cir. 2022) .................................................................. 14
*Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (N.Y. 1992) .. 8, 10, 11
*Loughlin v. Goord*, 558 F Supp 3d 126, 150 (S.D.N.Y. 2021) ..................................................... 14
*McCarthy v. Jauregui*, 2023 US Dist LEXIS 97285 (MD Pa June 2, 2023, No. 3:21-CV-1759) 16
*Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001) ....................................................... 8
*Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F Supp 2d 279 (SDNY 2006) ....................................... 10
*Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 866 N.E.2d 439, 834 N.Y.S.2d 494 (N.Y. 2007) 14, 15
*Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ....................................................................... 6
*Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) .................................................. 5
*St. Amant v. Thompson*, 390 U.S. 727 (1968) ............................................................................... 11
*Stukuls v. State,* 42 N.Y.2d 272, 366 N.E.2d 829, 397 N.Y.S.2d 740 (N.Y. 1977) .................. 8, 10
*Thai v. Cayre Group,* Ltd., 726 F. Supp. 2d 323 (S.D.N.Y. 2010) ................................................. 7
*Toker v. Pollak*, 44 NY2d 211, 376 N.E.2d 163, 405 N.Y.S.2d 1 (1978) ............................... 12, 14

**STATUTES**

20 U.S.C. § 1092(f) .......................................................................................................................... 9
28 U.S.C. § 1391(b)(1-3) ............................................................................................................... 14
28 U.S.C. § 1406(a) ....................................................................................................................... 14
New York Education Law § 3020-a ............................................................................................. 13
New York Civil Rights Law § 78 ................................................................................................. 12
New York State Human Rights Law (NYSHRL) (Executive Law 290 et. seq.) ....................... 4, 9
NY EDN Chapter 16, Title 7, Article 129-B (6447) .................................................................. 4, 9
20 U.S.C. §§ 1681, et. seq. .......................................................................................................... 4, 9
42 U.S.C. §§ 2000-e, et. seq ........................................................................................................ 4, 9
VAWA amendments to the Clery Act, (34 CFR 668) ................................................................ 4, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3, 5, 6, 8
Fed. R. Civ. P. 12(b)(3) ................................................................................................................ 3

**TREATISES**

Restatement § 600 ..................................................................................................................... 11

**REGULATIONS**

34 CFR 106.45 ............................................................................................................. 4, 9, 12, 13

## PRELIMINARY STATEMENT

Defendant Ms. Michelle Carney respectfully submits this memorandum of law in support of her motion to dismiss plaintiff's amended complaint ("amended complaint") in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted) and Federal Rules of Civil Procedure 12(b)(3) (improper venue). Defendant joins these motions pursuant to Federal Rules of Civil Procedure 12(g)(1).

**STATEMENT OF FACTS**

Plaintiff, Mr. Marcel Koszkul, brought this action to recover alleged damages purported to be caused by defendant, in connection with her reporting sexual violence to the Rochester Institute of Technology ("RIT"), the university both attended.

Ms. Carney's report to RIT utilized the very mechanism RIT instructed her to use, in alignment with its legal obligations to prevent and respond to allegation of sexual harassment. *See* Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681, et. seq), and its implementing regulations, 34 CFR 106 (hereinafter, "the regulations"), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000-e, et. seq), VAWA amendments to the Clery Act, (34 CFR 668), NY EDN Chapter 16, Title 7, Article 129-B (6447) (hereinafter, "Article 129-b"), and New York State Human Rights Law (NYSHRL) (Executive Law 290 et. seq). Ms. Carney's submission was delivered to RIT's Title IX Coordinator, the person obligated under the law to review reports of sexual harassment and determine the institution's obligations to respond. The regulations allow a Title IX Coordinator to dismiss a report. *See* 34 CFR 106.45(b)(3)(ii). Ms. Carney's report was not dismissed. The Title IX Coordinator investigated the report. After the investigation concluded, RIT had the option to refer the matter to an informal resolution, as Ms. Carney requested; however, plaintiff declined. As a result, RIT proceeded with its administrative hearing process, charging plaintiff with a violation of its Title IX policy, "C27.0 Policy on Title IX Sexual Harassment for Faculty, Staff, and Students" (hereinafter, "RIT's Title IX Policy"). *See* Exhibit 1.

At the conclusion of its administrative hearing process, RIT ultimately found Mr. Koszkul "not responsible" for the alleged violations of RIT policies and Mr. Koszkul brought this action against Ms. Carney for libel per se in connection with her reporting his assaulting her.

4

Ms. Carney seeks to dismiss Mr. Koszkul's ameded complaint in its entirety, or, in the alternative, requests this court transfer venue to the United States District Court of the Western District of New York.

## LEGAL ARGUMENT

The New York Court of Appeals has explained there is "particular value" in resolving defamation claims at the pleading stage, "so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 883 F. Supp. 2d 441 [S.D.N.Y. 2012]) (quoting *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373 [1995]).

On a Fed. R. Civ. P. 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 [2009]).  Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal* at 678-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id.*

A court, in making this determination, may include "…not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 18 (S.D.N.Y. 2022) (quoting *Gregory v. Daly*, 243 F.3d 687, 691 [2d Cir. 2001]).

"Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A defamatory statement is one that exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Karedes v. Ackerley Group, Inc*., 423 F.3d 107, 113 (2d Cir. 2005) (quoting *Celle* at 177); *Biro*. Plaintiff fails to meet the pleading requirements for libel.

I.  **Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to plead sufficient factual allegations.**

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp* at 548. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 662.

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the pleading. "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). In defamation actions, this typically includes the documents containing the allegedly defamatory statements. *Biro* at 455. In this case, documents containing allegedly defamatory statements were included at Exhibits A-C.

6

"While the federal rules do not require the particularized pleading requirements set forth in New York's CPLR section 3016, Rule 8 [of the Federal Rules of Civil Procedure] still requires that each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,* No. 06 Civ. 1260, 2009 U.S. Dist. LEXIS 111675, 2009 WL 4547792, at *8-9 (E.D.N.Y. Dec. 1, 2009) (citations omitted); *see also Thai v. Cayre Group, Ltd.,* 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated").

Plaintiff's complaint fails to adequately identify the purported communications he alleges as libel. The written statements plaintiff cites to in support of his allegations consist of three documents; a July 29, 2022 report to RIT's Title IX Office (Exhibit A, doc. 14-1); a document which is alleged to be – but is not in fact – an August 22, 2022 formal complaint (Exhibit B, doc. 14-2); and a May 5, 2023 letter from RIT to plaintiff (Exhibit C, doc. 14-3). As defendant only authored one of the written statements in the exhibits (Exhibit A, doc. 14-1), it is unclear why plaintiff believes Exhibit B and C evidence her engaging in libel. Additionally, as plaintiff only cites Exhibit C in bringing his causes of action, it is unclear why he has included Exhibits A and B at all.

Exhibit B (doc. 14-2) is not a formal complaint, nor is it dated August 22, 2022. Instead, Exhibit B is RIT's August 31, 2022 letter to plaintiff notifying him of its intent to investigate allegations made against him. This letter, which is not Ms. Carney's written statement, but rather RIT's, does not contain the nine statements plaintiff alleges Ms. Carney made. Like

7

Exhibit B, Exhibit C (doc. 14-3) is also not Ms. Carney's written statement, but rather RIT's; specifically, this document is RIT's articulation of its findings after its administrative hearing.

Finally, any alleged statements by defendant contained within Exhibits B and C, are clearly hearsay and cannot be offered by plaintiff to prove the truth of the matter asserted within them. *See* Fed. R. Civ. P. 801.

Because plaintiff fails to adequately notify defendant of her written statements he asserts as libelous, plaintiff's complaint should be dismissed.

**II.     Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because defendant's statements were privileged.**

Because defendant's written reports to RIT's Title IX Office fall within several privileged categories, plaintiff fails to allege libel per se.

    A. <u>Defendant's written communication to RIT falls within the common interest qualified privilege.</u>

New York law grants a qualified common interest privilege to "defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001). This qualified privilege is afforded to statements made in good faith regarding a matter in which the speaker or writer has an interest or duty that is shared with the listener or reader. *See Stukuls v. State*, 42 N.Y.2d 272, 366 N.E.2d 829, 833, 397 N.Y.S.2d 740 (N.Y. 1977). The interest or duty need not only be a legal one but may also be motivated by moral or social interest or duty. *Id.*

"The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Hodges* (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 349, 590 N.Y.S.2d 857 [N.Y. 1992]).

The defendant in *Hodges*, a member of the Mid-Atlantic Teachers, submitted a written complaint to the Board of Mid-Atlantic Teachers reporting an incident wherein another member engaged in sharing sexually explicit content with students. *Id.* Hodges, the alleged perpetrator, sued Lutwin, the reporter, for defamation, defamation per se, and tortious interference with prospective business relations. *Id.* Justice Andrew L. Carter, Jr. dismissed Hodges's complaint finding the allegedly discriminatory statements made by Lutwin fell within the common interest qualified privilege, explaining that as a member of the Mid-Atlantic Teachers, Lutwin shared an interest with the Mid-Atlantic Teachers in protecting students from inappropriate conduct. *Id.* at 19.

Like the defendant in *Hodges*, Ms. Carney and RIT's Title IX Office had a common interest in ensuring RIT students are protected from inappropriate conduct impeding equal access to RIT's educational program. This common interest arises from students' right to a safe learning environment and RIT's duties (under federal and state laws) to prevent and appropriately respond to allegations of sexual harassment. *See* Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681, et. seq), the regulations, Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000-e, et. seq), VAWA amendments to the Clery Act, (34 CFR 668), Article 129-B, and New York State Human Rights Law (NYSHRL) (Executive Law 290 et. seq.). RIT is obligated to provide training to student leaders and student-athletes (among other groups) on domestic violence, dating violence, stalking, and sexual assault prevention and on procedures victims should follow if a sex offense occurs, as well as information about to whom the alleged offense should be reported. *See* Article 129-B (6447) (5-6); 20 U.S.C. 1092(f).

As an athlete and a student leader, Ms. Carney attended RIT's training on these topics. After plaintiff assaulted her, Ms. Carney recalled, from her training, that the Title IX Office

9

investigates reports of sexual assault. Importantly, Ms. Carney reported her experience in one sentence on a form filled which stated, "All reports made using this form are kept as private as possible." *See* doc. 14-1.

As such, the common interest qualified privilege exists in this case. Reports of sexual harassment made to education institutions must be protected because "… on certain occasions the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability . . . outweighs the harm that may be done to the reputation of others." *Garson v. Hendlin,* 141 A.D.2d 55, 532 N.Y.S.2d 776, 780 (App. Div. 2nd Dept 1988). Reports of sexual assault committed by one member of a college community upon another, made to a school, using the mechanism required pursuant to Title IX, meets the standard of common interest qualified privilege.

Because plaintiff does not allege Ms. Carney made any other written statements which could constitute libel, plaintiff's complaint should be dismissed.

> i. <u>Plaintiff fails to allege malice and therefore fails to overcome the common interest privilege.</u>

Once qualified privilege has been established, a plaintiff must show defendant acted with malice to overcome the privilege. That is, a plaintiff must come forth with some evidence that the statements were "false and that the defendant was actuated by express malice or actual ill-will." *Stukuls* at 834. Malice in this context means "personal spite or ill will, or culpable recklessness or negligence." *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F Supp 2d 279, 292 (SDNY 2006) (internal citations omitted).

A triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the written statement. *Liberman*. In *Liberman*, the NY Court of Appeals found that where the defendant did not make a public announcement of his suspicions--from

10

which an inference could be drawn that his motive was to defame plaintiff--but relayed them to a colleague who was in a position to investigate no malice could be found. *Id.* at 439. The same must be found here as well.

Plaintiff does not allege Ms. Carney made any public statements; in fact, the only written statement plaintiff alleges was made to RIT's Title IX Office; the office at RIT in a position to investigate Ms. Carney's report. Plaintiff's allegations actually demonstrate a lack of evidence of malice, in that he acknowledges "an amicable ending" to the alleged romantic relationship. Doc. 14, para 12.

While plaintiff makes conclusory allegations Ms. Carney knew her statements were "false and defamatory" (doc. 14, para. 5), evidence of the falsity of a statement alone is insufficient to raise an issue of fact as to malice. *Kasachkoff v. City of New York*, 107 A.D.2d 130, 485 N.Y.S.2d 992, 996 (App. Div 1st Dep't 1985). In other words, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." *Liberman* at 438 (quoting *St. Amant v. Thompson*, 390 US 727, 731 [1968]; *see also,* Restatement § 600, comment b).

Additionally, the mere fact of RIT determining plaintiff was "not responsible" for a violation of RIT's policies is not evidence of the falsity of Ms. Carney's statements. RIT's adjudication was focused on whether plaintiff violated the specific language of RIT's policy, not whether Ms. Carney believed she was assaulted. Also, because Ms. Carney has brought an article 78 proceeding against RIT to contest the outcome of this very adjudication, plaintiff's reliance on its findings is premature. *See,* Declaration, J. Morgan Levy, Exhibit 2 (Memorandum of Law in Support of Article 78).

  B. <u>Defendant's written communication to RIT is absolutely privileged because it was made in the course of a quasi-judicial proceeding.</u>

11

The only document proffered by plaintiff and authored by defendant is a one sentence written statement reporting sexual harassment to RIT. This type of statement is absolutely privileged and cannot form the basis of a libel claim.

New York provides absolute immunity to communications made before administrative bodies which: (1) provide for active participation by both parties; (2) are empowered to take remedial action based upon its findings; and (3) make determinations that are ultimately reviewable by a court. *Toker v. Pollak*, 44 NY2d 211, 222, 376 N.E.2d 163, 405 N.Y.S.2d 1 (1978); *see also Allan & Allan Arts v. Rosenblum,* 201 AD2d 136 (2d Dept 1994) (shield of absolute immunity which attaches to statements made in the course of judicial proceedings also extends to quasi-judicial proceedings of administrative agencies which, as here, are adversarial in nature, result in a determination based upon the application of relevant law to the facts, and are susceptible to judicial review).

Ms. Carney's report to RIT's Title IX Office was a communication to an administrative body required to follow Title IX's procedures. *See* 34 CFR 106.45(b). The regulations (and RIT's procedures used in this case) require all of the protections New York State articulates as a quasi-judicial proceeding and therefore afford absolute privilege. The proceedings provide for active participation by both parties, allow each party to: have an advisor of choice who may or may not be an attorney, inspect and review evidence and the Final Investigation Report, offer witnesses, and participate in a live hearing with cross examination. *See* Exhibit 1, Policy § IX. These administrative protections in RIT's Title IX Policy are dictated by the regulations. *See* 34 CFR 106.45(b). Plaintiff himself benefitted from these administrative protections as he had an attorney serve as his advisor during the RIT investigation and live hearing. In contrast to

12

plaintiff's attorney advisor, defendant's advisor was a Sexual Assault Services Advocate, not an attorney.

Plaintiff's attorney engaged in cross-examination of defendant during the hearing. Just like in a court of law, advisors in a Title IX hearing are only allowed to ask questions that are relevant. Therefore, the hearing board determined relevancy of each question before each party responded.

Additionally, RIT's administrative process sets forth expectations of good faith and a prohibition of false statements (*see* Exhibit 1, Policy § IX), the hearing board is empowered to take action based upon its findings (*see* Exhibit 1, Policy § IX (E) (7)) and the determination is subject to judicial review pursuant to New York Civil Rights Law § 78 (NY CLS Civ R § 78, Consol., Lexis Advance through 2023 released Chapters 1-358).

The Title IX administrative hearing procedures are also remarkably comparable to proceedings held pursuant to New York Education Law § 3020-a, widely recognized by New York courts as quasi-judicial administrative actions subject to absolute privilege. *See Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d Cir. 2005). Both RIT's Title IX proceedings and § 3020-a proceedings require the person alleged to have engaged in the behavior be provided notice of the charges against them in detail, the maximum penalty which may be imposed, the rights afforded to them, notice of a hearing, a reasonable opportunity to defend himself or herself and an opportunity to testify on his or her own behalf (without a requirement that they do so), and the right to be represented by counsel and cross examine witnesses. There are similar provisions for the creation of hearing recordings and outcome letters as well as appeals. Each contain guidelines for use in addressing delays in the process. *See* New York Edu § 3020-a; 34 CFR 106.45.

The fact Ms. Carney's statement was made before (and not during) the Title IX proceeding does not strip it of the privilege. Absolute privilege has also been recognized for statements made in the "preliminary or investigative stages of [a judicial or quasi-judicial] process, particularly where compelling interests are at stake." *Loughlin v. Goord*, 558 F Supp 3d 126, 150 (S.D.N.Y. 2021) (quoting *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 866 N.E.2d 439, 443, 834 N.Y.S.2d 494 [N.Y. 2007]). Absolute privilege has been afforded to communications made in the course of filing of a claim before a worker's compensation board, a grievance committee of a Bar Association, and an agency licensing real estate brokers in connection with a license revocation proceeding." *Toker* at 168 (citations omitted).

Because defendant was initiating a quasi-judicial administrative process that contains all the procedural protections required for absolute immunity, her communication made in the course of filing a complaint to the Title IX Office is immune from a claim for libel.

### i. Plaintiff's reference to *Khan v. Yale University* is misplaced.

Plaintiff's attempt to liken his case to that of *Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir 2022) is misguided. The plaintiff in *Khan* appealed a decision of the United States District Court for the District of Connecticut, dismissing his claims for defamation and tortious interference with contract against defendant "Jane Doe." Doe had asserted Khan sexually assaulted her while the two were students at Yale University and Khan was ultimately expelled from the school as a result. The district court concluded Khan failed to state claims for which relief could be granted because Doe's assertions of the sexual assault at a Yale disciplinary hearing were shielded by quasi-judicial immunity, precluding both defamation and tortious interference claims. In his appeal, Khan argued error in the application of quasi-judicial immunity to a private university's disciplinary proceedings. Because existing Connecticut law did not permit the Court to predict

14

whether the Supreme Court of Connecticut would extend quasi-judicial immunity to statements made at non-government proceedings generally, or at Yale's sexual misconduct disciplinary hearings specifically, the Court certified those questions to the Connecticut Supreme Court, deferring its resolution of this appeal in the interim.  *Id.*

Unlike in Connecticut, New York has already extended quasi-judicial immunity to statements made during non-governmental proceedings, (*see Rosenberg v. Metlife, Inc.*, 8 NY3d 359, 361 [2007]), and to statements made during private college's disciplinary proceedings.  See *Constantine v. Teachers Coll.*, 29 Misc 3d 1214[A], 1214A, 2010 NY Slip Op 51826[U], *9 [Sup Ct, NY County 2010]) upheld by *Constantine v. Teachers Coll.*, 93 AD3d 493, 494 (1st Dept 2012) (finding statements made during Teachers College Faculty Advisory Committee proceedings to address allegation of plagiarism were made during quasi-judicial proceeding and were absolutely privileged) (internal citations omitted).

In addition to Khan's being rooted in Connecticut instead of New York law, the disciplinary hearing at the core of Khan case was held in 2018 (*see Khan* at 218) prior to the 2020 amendment to Title IX Regulations.  *See* 85 FR 30026, 30575, May 19, 2020, effective Aug. 14, 2020.  As explained in the Federal Register, the 2020 Amendments to the Title IX Regulations were created to "**establish procedural due process protections** that must be incorporated into a recipient's grievance process to ensure a fair and reliable factual determination when a recipient investigates and adjudicates a formal complaint of sexual harassment."  85 FR 30026, 30030.

The 2020 Amendments to Title IX incorporated the following procedural due process protections: the school's grievance process must provide for a live hearing; at the live hearing, the decision-maker(s) must permit each party's advisor to ask the other party and any witnesses

15

all relevant questions and follow-up questions, including those challenging credibility; cross-examination at the live hearing must be conducted directly, orally, and in real time by the party's advisor of choice and never by a party personally; the recipient must provide for the entire live hearing (including cross-examination) to occur with the parties located in separate rooms with technology enabling the parties to see and hear each other at the request of either party; only relevant cross-examination and other questions may be asked of a party or witness; before a complainant, respondent, or witness answers a cross-examination or other question, the decision-maker must first determine whether the question is relevant and explain to the party's advisor asking cross-examination questions any decision to exclude a question as not relevant; the school must provide a party an advisor without fee or charge to that party to conduct cross-examination on behalf of that party; and schools must create an audio or audiovisual recording, or transcript, of any live hearing.  *See* Summary of Major provisions of the Department of Education's Title IX Final Rule (a) Live Hearings & Cross-Examination (for Post Secondary Institutions), Exhibit 3, pg. 7.

      While, though it does not appear there have been any post 2020 Amendment cases directly on point in this district, other courts have clearly found the procedure required by the amendments to be "quasi judicial."  *See McCarthy v. Jauregui*, 2023 US Dist LEXIS 97285, at *34-35 (MD Pa June 2, 2023, No. 3:21-CV-1759) ("[Title IX disciplinary hearings] are expressly authorized by federal regulations, 34 C.F.R. § 106.45, […] provide the parties to a Title IX proceeding with a full range of procedural rights including notice, an opportunity to be heard and present witnesses and evidence, the assistance of retained counsel, and a right to appeal adverse decisions.  Therefore, these disciplinary hearings establish the legal rights, duties, or privileges of a party after a process that embodies the attributes of judicial proceedings.")

### III.	Plaintiff's complaint should be dismissed for lack of venue.

Pursuant to the Federal Rules of Civil Procedure venue is appropriate in a judicial district in which any defendant resides; a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or if there is no district in which an action may otherwise be brought…any judicial district in which defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. §1391 (b) (1-3). According to his complaint, plaintiff resides in Connecticut. (Doc. 14). Ms. Carney's permanent residence is in Saratoga County, New York, within the purview of the Northern District of New York and she currently resides in Monroe County, New York, within the purview of the Western District of New York. Additionally, all of the events and omissions giving rise to this claim occurred in Monroe County, New York and Ms. Carney's claim against RIT related to the same facts and circumstances will be filed in the Western District of New York.

If the court declines defendant's request for full dismissal, defendant respectfully requests this case be transferred to the Western District of New York for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1406(a).

### CONCLUSION

Defendant respectfully requests this court dismiss the complaint against her, as well as provide any such other relief as the Court deems just and proper.

Dated:	Rochester, New York
	October 20, 2023

>	J. Morgan Levy Firm, PLLC
>
> By:	*/s/ J. Morgan Levy*
>	J. Morgan Levy, Esq.
>	24 N. Main Street, Suite 2.
>	Fairport, New York 14450
>	Tel.: 585-678-1160
>	Fax: 585-973-0013
>	Email: morgan@jmorganlevyfirm.com

17

TO:    Richard Allen Altman
Law Office of Richard A. Altman
150 East 56th Street
Suite 12b
New York, New York 10022
Tel.: 917-353-4077
Fax: 212-633-0123
Email: altmanlaw@earthlink.net