UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MARCEL KOSZKUL,

                              Plaintiff,                        Case No. 1:23-cv-06439-JGLC

                -against-                      PLAINTIFF REQUESTS
                                                      ORAL ARGUMENT.
MICHELLE CARNEY,

                              Defendant.
--------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated: November 15, 2023

                                      LAW OFFICE OF RICHARD A. ALTMAN
                                      Attorneys for Plaintiff
                                      150 East 56th Street, Suite 12B
                                      New York, NY 10022
                                      212.633.0123
                                      altmanlaw@earthlink.net

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I:
ALL OF THE DEFAMATORY STATEMENTS ARE SET FORTH IN FULL
IN THE AMENDED COMPLAINT AND THE ANNEXED EXHIBITS. . . . . . . . . . . . . . . . . . 4

POINT II:
THE STATEMENTS ARE NOT ABSOLUTELY PRIVILEGED, AND
MALICE IS NOT REQUIRED TO OVERCOME QUALIFIED PRIVILEGE. . . . . . . . . . . . . . 6

POINT III:
DEFENDANT'S ARTICLE 78 PETITION IS IRRELEVANT HERE.. . . . . . . . . . . . . . . . . . . 12

POINT IV
THE VENUE SHOULD NOT BE CHANGED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arma v Buyseasons, Inc.*, 591 F Supp 2d 637 (SDNY 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Burnham v. Superior Court,* 495 U.S. 604 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Biro v. Conde Nast,* 883 F.Supp.2d 442 (SDNY 2012), *affd* 807 F.3d 541 (2d Cir. 2015) . . . 7, 8

*Dennick v Railroad Company*, 103 U.S. 11 (1880). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Filartiga v Pena-Irala*, 630 F.2d 876 (2d Cir 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Frame v Dais v Lane Bryant, Inc.*, 2001 US Dist LEXIS 17210 (SDNY Oct. 22, 2001, 97 Civ. 2011)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Khan v Yale University*,   ___F.4th___, 2023 U.S. App. LEXIS 28381 (2d Cir Oct. 25, 2023, No.
21-95-cv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Megna v. Biocomp Labs. Inc*, 220 F.Supp.3d 496, 497-498 (SDNY 2016) . . . . . . . . . . . . . . . . 16

*Meyer v. Bd. of Regents of the Univ. of Oklahoma*, 597 F App'x 27 (2d Cir 2015). . . . . . . . . . 15

*Minnette v. Time Warner,* 997 F.2d 1023 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morass v White*, 571 F.Supp.3d 77, 93 (SDNY 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Naartex Consulting Corp. v. Watt,* 722 F.2d 779 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Palin v. N.Y. Times Co.,* 940 F.3d 8046 (2d Cir.2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Routh v. Univ. of Rochester*, 981 F.Supp.2d 184 at 213 (WDNY 2013) . . . . . . . . . . . . . . . . . . 10

*Watson v Doe*, 2023 US Dist LEXIS 180671 (SDNY Oct. 6, 2023, No. 19-cv-533 (JGK). . . . . 7

*Frame v. Whole Foods Mkt., Inc.,* No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720, 2007 WL
2815613 (SDNY Sept. 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Yukos Capital S.A.R.L. v Feldman*, 2016 US Dist LEXIS 125287 (SDNY Sep. 14, 2016, No. 15-cv-4964 (LAK) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

## STATE CASES

*Constantine v Teachers College,* 93 AD3d 493 (1st Dept 2012) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Frechtman v Gutterman,* 115 AD3d 102 (1st Dept 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Front, Inc. v Khalil,* 24 NY3d 713 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Loughry v Lincoln First Bank,* 67 NY2d 369 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Naftali v Lugo,* 2019 NY Slip Op 32057 [U] (Sup Ct, NY County 2019) . . . . . . . . . . . . . . . . . 5

*Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369 (1977), *cert. den.* 434 U.S. 969 (1977). . . . . 5

*Rosenberg v Metlife, Inc.,* 8 NY3d 359 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL STATUTES

Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§1681-1688 (2018). . . . . . . . . 1

28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 14

F.R.E. 801(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F.R.E. 810(d)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10

## STATE STATUTES

CPLR 3016(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Educ. L § 6444 subd. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Penal Law § 130.35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PRELIMINARY STATEMENT

Plaintiff Marcel Koszkul, by his attorneys, Law Office of Richard A. Altman, submits this memorandum of law in opposition to defendant's motion to dismiss the First Amended Complaint ("FAC")  or, in the alternative to change venue to the Northern or Western Districts of New York. The complaint states valid claims for libel *per se*, and it should remain in this Court.

This case presents the increasingly common conflict between the goal of advancement of gender equality in the university and college setting, enacted by Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§1681-1688 (2018), and the role those amendments play in the adjudication of allegations of improper sexual conduct alleged by their students against each other. Many of these allegations are accusations of criminal conduct, and bear potentially adverse and even disastrous consequences for those wrongly accused[1]. Of course, such conduct cannot be condoned. But these institutions are not courts of law, and the present case illustrates the problems which arise from their attempts to act like them.

The Second Circuit has very recently balanced the interests at stake, in its landmark decision in *Khan v Yale University*, ___F.4th___, 2023 U.S. App. LEXIS 28381 (2d Cir Oct. 25, 2023, No. 21-95-cv), and that ruling is dispositive of the principal issues in this motion, namely the question of absolute and qualified privilege, as we discuss below.

The allegations of the complaint (which must be accepted as true at this point) are that the parties were both students at the Rochester Institute of Technology ("RIT"). For about two to three months, September to November 2021, they were in a consensual and intimate relation, publicly

---

[1] New York State requires notations of any such determinations on student transcripts, *see* Educ. L. § 6444 subd. 6.

known to their fellow students. But the defendant abruptly broke it off, telling plaintiff that she did so because he was "not a girl."

The parties had no further interaction until about five months later (April 2022), when plaintiff heard rumors about someone on campus having been raped. He did not think that it might be about him, but in July 2022, the defendant filed a formal charge against him, alleging that she "was sexually assaulted/raped by Marcel" (FAC, ¶ 16 at 3). Later, defendant brought eight more nearly identical accusations, for a total of nine accusations of rape or sexual assault. Eventually RIT conducted a hearing, and rejected the defendant's claims in their entirety (*id.*, ¶ 28 at 4). Plaintiff has now brought a defamation action against the defendant for the damages caused him by these false charges.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing his complaint on July 26, 2023 (ECF Dkt #1), within one year from the defendant's initial and subsequent accusations against him to RIT.  On September 15, 2023, after being admitted *pro hac vice* (Dkt. #9), defendant's counsel filed the present motion to dismiss. Plaintiff then advised the Court of his intention to file an amended complaint as of right (Dkt. #11), and did so on October 11, 2023 (Dkt. #14). The amended complaint contains nine distinct causes of action, each one based upon a single statement by the defendant. Each complained-of statement accuses the plaintiff of rape or sexual assault on a separate occasion. Defendant then filed a new motion to dismiss on October 20, 2023 (Dkt. #17, 18), and plaintiff now submits the present papers in opposition to this new motion.

In her motion, the defendant makes three arguments: that the amended complaint fails to state a claim for defamation because it does not cite the exact language; that the complained-of statements

were subject to either absolute or qualified privilege against defamation claims; and that the case should be dismissed or transferred for improper venue.

The amended complaint cites and discusses the case of *Khan v Yale University*, *supra*, which at the time of its filing was still *sub judice*, and defendant argues for dismissal based upon its status at that time. However, on October 25, 2023 (just five days after defendant's motion), the Second Circuit issued its unanimous decision in the case. It represents a sea change in the law regarding the determination of sexual assault claims at institutions of higher education. It is discussed in more detail below, but it stands for the basic proposition that in District Courts in the Second Circuit, defamation claims arising out of factual assertions made in the context of university and college Title IX claims are no longer automatically entitled either to absolute or qualified privilege. Rather, the existence and scope of the privilege depend upon the degree of similarity which the university's or college's procedures applicable to the resolution of claims of sexual assault and the like have to those in courts of law.

Defamation claims arising from statements in court proceedings are invariably barred by the absolute privilege so long as the statements are at all relevant to the proceedings (*Front, Inc. v. Khalil*, 24 NY3d 713, 718 [2015]). But in colleges and universities, that question is a fact-based one, depending on the scope of the due process protections afforded to those accused. It includes such factors as the right to counsel, the right to call witnesses, the right of cross-examination, the degree of impartiality of those who decide the claims, and more. Thus in that context, privilege is no longer a defense available as a matter of law.

In *Khan*, the Second Circuit found that the procedures which Yale followed were insufficient to permit the defense of either absolute or qualified immunity, and remanded the case to the District

Court for determination of the facts. Its reasoning, and the facts here, require the denial of the present motion. The procedures follower by RIT were in their own ways as insufficient as those of Yale, and in any event, their sufficiency is ultimately a question of fact and law, not before this Court on this motion to dismiss.

## ARGUMENT

### POINT I

### ALL OF THE DEFAMATORY STATEMENTS ARE SET FORTH IN FULL IN THE AMENDED COMPLAINT AND THE ANNEXED EXHIBITS.

Defendant's first argument is that the FAC "fails to adequately identify the purported communications he alleges as libel" (Mem. at 7). Specifically, she says that of the three exhibits attached to it, defendant only wrote one of them (Exh. A). Exhibits B and C, she says, contain statements not authored by her. But she does not submit an affidavit denying that they were made, or that they are not reasonably accurate summaries of her accusations. RIT presumably did not invent them, but instead accurately reported what defendant told them in its notice to the plaintiff.

Moreover, defendant completely ignores that the statements are set forth in full in the FAC itself. Each and every one of the nine causes of action cites the defamatory language *in haec verba*. Paragraphs 12, 48, 52, 56, 60, 64, 68, 72, 76 each contain a single statement in quotation marks, either made by the defendant or attributed to her by the RIT Report, each and every one of which is defamatory *per se*. While defendant correctly says that direct quotation of defamatory language is not required in a complaint under Rule 12(b)(6), as compared with the State rule of CPLR 3016(a), she nowhere addresses the statements quoted in the complaint. The exhibits are admissible but

unnecessary, because the statements are set forth in the FAC. They demonstrate that the statements were made, but their exact quotation in the amended complaint is sufficient to deny the motion.

Moreover, nowhere does defendant argue that the statements are not defamatory, or that they are true. Nowhere does defendant deny that she made any of them, or that they should not be attributed to her. Nowhere does she deny that RIT was authorized to make the statements on her behalf. So there can be no question that the statements were made, and that she made them or authorized RIT to make them.

It cannot be seriously argued that a false accusation of rape or sexual assault is not defamatory *per se.* "A false accusation of sexual assault is defamatory, since it claims both "'illegal and unethical'" activity and potentially "'criminal activity'" (*Naftali v Lugo*, 2019 NY Slip Op 32057[U], *7 [Sup Ct, NY County 2019]), *citing Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379, [1977], *cert. den.* 434 U.S. 969 [1977] and *Frechtman v Gutterman*, 115 AD3d 102, 104 [1st Dept 2014].

Moreover, false accusations of rape or sexual assault are clearly defamatory *per se*, because (1) the terms have a precise meaning within both common understanding and the New York Penal Law, (2) such an accusation is not a matter of opinion, but (3) a factual statement that can be proven true or false, and (4) are felonies.

Defendant says that the statements in two of the exhibits are "hearsay" (Mem. at 8), because they are from the summary of charges which RIT presented to Mr. Koszkul. But they are not hearsay. The issue is whether the defendant made the statements at all, not whether they are true, F.R.E. 801(c)(2). Obviously they are not true; that they are false and defamatory is the basis for this lawsuit. "[P]laintiff may argue that the statement is not offered for its truth at all. Indeed, the import of the

statement to the plaintiff's case is not the statement's truth, but whether the statement was made at all." (*Dais v Lane Bryant, Inc.*, 2001 US Dist LEXIS 17210, at *11, n 3 [SDNY Oct. 22, 2001, 97 Civ. 2011]). And if she had never made the statements which RIT attributed to her, defendant could have submitted a declaration so stating, but she did not.

Moreover, the statements are also not hearsay under F.R.E. 810(d)(2)(C), because they were "offered against an opposing party and...[were] made by a person whom the party authorized to make a statement on the subject." Plainly, RIT was authorized to speak on defendant's behalf, and to inform plaintiff about her accusations. RIT did not make up the statements, but quoted what the defendant had herself said. At least, we must so conclude, since defendant does not deny making any of them.

And finally, even if their authenticity is disputed, they are still sufficient under Rule 12(b)(6). "Under New York law, to state a claim for defamation, a plaintiff must allege (1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability" (*Morass v White*, 571 F.Supp.3d 77, 93 [SDNY 2021], *citing Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 [2d Cir. 2019]). Plaintiff has done so, and the amended complaint is sufficient.

## POINT II

### THE STATEMENTS ARE NOT ABSOLUTELY PRIVILEGED, AND MALICE IS NOT REQUIRED TO OVERCOME QUALIFIED PRIVILEGE.

Under New York law, pleading facts to demonstrate malice is not a requirement for a private figure's defamation complaint. While the State's new anti-SLAPP law does impose heightened standards of pleading, even for private figures, that standard does not apply in federal court, where

the only pleading standards are those imposed by *Twombly* and *Iqbal, see generally Watson v Doe*, 2023 US Dist LEXIS 180671 (SDNY Oct. 6, 2023, No. 19-cv-533 (JGK).

In the Second Circuit, it is not appropriate to dismiss a defamation claim on the basis of failure to plead malice. *See Yukos Capital S.A.R.L. v Feldman*, 2016 US Dist LEXIS 125287, at *20-21 (SDNY Sep. 14, 2016, No. 15-cv-4964 (LAK)):

> [T]he Second Circuit has cautioned district courts–specifically in the context of deciding qualified privilege in defamation cases–that [i]t is important to recognize the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment....Similarly, the New York Court of Appeals case to most squarely address the propriety of dismissing a defamation claim on the grounds of qualified privilege on a motion to dismiss held that plaintiff should have the opportunity to prove through discovery that malice was the one and only cause for the statement even though doing so might be well-nigh impossible. (cleaned up).

Here, by contrast, the conclusion is almost inescapable that malice–in both the pleading and common-law sense–was the sole reason for the defendant's statements. Her silence for six months after she broke off her relationship with the plaintiff is sufficient. Were her accusations based on reality, we can reasonably assume that she would have made them shortly after the events, not months later. In addition, the implausibility of the statements taken collectively also strongly suggest knowledge of falsity.

But plaintiff is a private figure, without the burden to plead malice. Defendant cites *Biro v. Conde Nast*, 883 F.Supp.2d 442 (SDNY 2012), *affd* 807 F.3d 541 (2d Cir. 2015)[2] for the proposition that defamation claims should be resolved at the pleading stage. But *Biro* dealt with an arguably public figure. *See Yukos Capital S.A.R.L., supra,* at *20-22, n 57: "[Biro], however, dealt with defamation of a public figure, in which the plaintiff clearly has the burden at the pleading stage to

---

[2] Plaintiff's counsel in the present case represented Peter Paul Biro.

allege facts demonstrating that the speaker made the statement with knowledge or reckless disregard to its falsity. [In] defamation claims against private figures...malice is not necessarily an element of the claim...*Biro* is therefore not applicable here."

More to the point is *Morass v White*, *supra,* 571 F.Supp.3d at 98: "In cases brought by private figure plaintiffs involving statements not related to a matter of legitimate public concern, a plaintiff need plead only that the defendant was negligent in making the statements." There can be no argument here that defendant's statements were matters of legitimate public concern. Of course sexual assault is a matter of legitimate public concern, but false accusations about it are not. Were that so, Saifullah Khan would not have prevailed.

Defendant argues that the plaintiff's reference to *Khan v Yale* is "misplaced" (Mem. at 14). But *Khan* is a blanket rejection of her entire argument regarding immunity. It is now established law in the Second Circuit that the question of immunity in the context of Title IX proceedings is a factual one, and its existence depends upon the details of the university's procedural protections. And this is so regardless of the 2020 amendments to Title IX regulations she mentions, which pre-dated the *Khan* decision. Moreover, even if the amendments were applicable, the question is whether RIT's procedures complied with those regulations sufficiently so as to create immunity for defendant's statements. This is not a question which can be answered in a Rule 12(b)(6) motion.

She further argues that New York has extended quasi-judicial immunity to statements made during non-governmental proceedings, and preliminary or investigative stages of them, citing *Rosenberg v Metlife, Inc.*, 8 NY3d 359 (2009) and *Constantine v Teachers College*, 93 AD3d 493 (1st Dept 2012). Both of those cases discussed the absolute immunity afforded to statements made in quasi-judicial proceedings, and the qualified immunity afforded under the common-interest

privilege, but even assuming its potential application here, the immunity can be lost. *Khan* rejects the idea that there is absolute immunity for statements made in university and college proceedings in this Circuit, whether before or during the proceedings, and it determines the outcome here.

Whether RIT's procedures were sufficient cannot be determined at this point, but there is certainly enough to question their sufficiency. For example, RIT's Title IX policy does not permit counsel to speak on the accused's behalf, and defendant's counsel did not. It says "The role of an Advisor of Choice during the hearing is limited to asking questions of the other party and otherwise providing quiet counsel to the individual Complainant or Respondent during the hearings." Mem., Exh. 1 at 17.

Furthermore, Mr. Koszkul was not permitted to have specific witnesses appear on his behalf at the hearing; all witnesses had to be approved by RIT in advance, and witnesses were not able to be cross-examined. Given that his relationship with the defendant was known to his classmates, such testimony would have been significant. Conversely, the defendant did ask for any witnesses to appear on her behalf.

Moreover, there was no cross-examination by either party against the other, in a case where credibility was of the utmost importance, and the parties were not sworn to tell the truth. They signed a statement saying that "[t]he statement I am about to give is true and factual to the best of my knowledge" (FAC, ¶ 27 at 4), but just as in *Khan*, the statement says nothing about possible consequences or legal repercussions for false statements.

The Title IX policy further states, "[l]ive hearings will be audio recorded by the university and will be made available to the parties only. The Center for Student Conduct and Conflict Resolution (students) or Human Resources (employees) shall determine the  procedures for access"

and "RIT will create a recording of any live hearing and make it available to the parties for inspection and review." (Mem., Exh. 1 at 18). But defendant's request for a copy was denied.

All in all, the proceedings were not sufficient to afford the defendant either absolute or qualified immunity, and at this point, the defense is not available as a matter of law. As stated in *Khan, supra* (slip op. at 31):

> [W]e conclude that Khan's state-law claims against Doe for defamation...should not have been dismissed insofar as they are based on Doe's 2018 statements at a Yale UWC hearing because, a. that hearing lacked the procedural safeguards necessary to qualify as a quasi-judicial proceeding and, therefore, Doe is not shielded by absolute immunity for her hearing statements; and b. although qualified immunity is available to participants in university and college sexual assault proceedings, Khan's complaint sufficiently pleads the malice required to defeat such immunity at this stage of the case.

*Khan* also disposes of any question of common-interest privilege, which defendant also cites as a possible defense. The defense has been rejected in the context of Rule 12(b)(6) motions in Title IX cases, *see Routh v Univ. of Rochester*, 981 F.Supp.2d 184 at 213 (WDNY 2013), because it is a fact-dependent affirmative defense, requiring evidence outside of the complaint.

Moreover, the common-interest "privilege is conditioned upon its proper exercise, and cannot shelter statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity." *Loughry v Lincoln First Bank*, 67 NY2d 369, 376 (1986). A woman's single false accusation that she has been raped is surely privileged against a defamation claim, but accusations that she has been raped or sexually assaulted *nine times* by the same man are so inherently incredible (and RIT so found) that they were presumptively made with reckless disregard of their falsity. Moreover, the facts that defendant broke off their relationship solely because he was

-10-

a man, and that she waited eight months before bringing her claims, further demonstrate her malice, in both senses of the word.

The question of malice–that is, knowing falsehood–in this context is easily answered. Putting it bluntly, is it plausible for someone to truthfully claim that she was "raped" or sexually assaulted nine times by one and the same man? A man whom she was in a dating relationship over months, known to other students? That is the defendant's word, not the plaintiff's characterization. It has a specific legal meaning, and it is not to be used lightly. An unconsented touching is still a crime, but it is not rape.

Penal Law § 130.35 defines rape in the first degree as follows: "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion." Section 130.00 subd. 1 says that "Sexual intercourse" has its ordinary meaning and occurs upon any penetration, however slight." All degrees of rape are felonies in New York State.

Following their breakup because plaintiff was "not a girl," defendant neither complained to RIT nor filed a police report at any time over the next eight months, until late July 2022, when she first accused plaintiff, and then a month later, when she filed a formal set of accusations against him, and then repeated them at the hearing.

A reasonable and objective observer might fairly conclude that someone who (1) does not file a police report, (2) waits eight months to bring a proceeding, containing (3) no less than nine accusations of rape and sexual assault against one man, and then (4) has every one of those accusations rejected after a hearing, is not being entirely truthful, and knows that she is not being entirely truthful. That is evidence of malice sufficient to deny this motion.

It is not sexist or anti-feminist to reach such a conclusion; indeed the 2020 amendments to Title IX, which were in effect at the time, were intended to create a balanced approach, where it would neither be presumed that complainants were always telling the truth, nor that they were always presumed to be lying. The potential consequences to a student falsely accused of what are actual felonies, without the due process protections of court proceedings, were and remain enormous. The *Khan* decision, and the 2020 amendments[3] are significant advances in insuring that outcomes are as close to the truth of what happened as they can be, given the inherent limitations of adversarial proceedings in settings whose primary purpose is education, not adjudication of rape charges.

Mr. Koszkul's good name is not vindicated or restored merely because RIT said he did not do what defendant said he did. It can only be restored if and when this Court and a jury say so. This motion should be denied.

## POINT III

### DEFENDANT'S ARTICLE 78 PETITION IS IRRELEVANT HERE.

In her declaration, defendant's counsel informs the Court that she has filed an Article 78 petition on behalf of defendant against RIT in the New York State Supreme Court, in which she has challenged the RIT's rejection of her claims against the plaintiff here. The case, *Carney v. Rochester Institute of Technology*, Index No. E2023010932, is pending in Monroe County Supreme Court. The

---

[3]  In July 2022, the Department of Education announced proposed regulations which may reverse many of the due process protections established by the 2020 regulations. *See* https://www.insidehighered.com/news/2022/06/30/new-title-ix-rules-raise-concerns-accused ("Some critics believe that changing the process for sexual assault investigations will roll back due process rights for the accused.")(accessed November 11, 2023). The regulations were supposed to become effective in October 2023, see https://blog.ed.gov/2023/05/ a-timing- update-on-title-ix-rulemaking/, but that has not yet occurred. Nevertheless, it is the actual procedures followed by RIT (and by Yale in Mr. Khan's case) which are inadequate to provide immunity, irrespective of the actual or proposed regulations.

-12-

Institute has moved to dismiss the petition for lack of standing, and for failure to name a necessary party, that is, the plaintiff here. But defendant does not offer any argument about the significance of the proceeding here. Indeed there is none. Even if the petition were successful, it would have no effect whatsoever on this case. For one thing, as RIT's opposition points out, Mr. Koszkul is no longer a student there, having graduated in 2022. So it has no power to do anything affecting him.

That the outcome of the proceedings at RIT was favorable to Mr. Koszkul is not a defense against defamation here; neither *res judicata* nor collateral estoppel applies, any more than they barred Saifullah Khan from suing Yale, despite its finding him guilty and expelling him, even after a real jury acquitted him in a real court of law. The only question here is whether the procedures followed by RIT were sufficiently akin to those in a real court for privilege to apply; the outcome is irrelevant. And as we have argued above, those procedures were clearly not sufficient, or at least their sufficiency is not before the Court on this motion to dismiss.

## POINT IV

### THE VENUE SHOULD NOT BE CHANGED

Defendant argues that this case should be dismissed because venue in the Southern District of New York is lacking. Defendant's counsel (but not defendant herself) claims that she resides in Saratoga County on a permanent basis, and currently resides in Monroe County. The former is within the Northern District of New York, and the latter is in the Western District. She further argues that her Article 78 proceeding was filed in the Supreme Court, Monroe County, in the Western District.

But there is no affidavit from defendant regarding her domicile or residence. And "absent an evidentiary hearing, the plaintiff need only make a prima facie showing of [venue]." (*Arma v Buyseasons, Inc.*, 591 F Supp 2d 637, 648 [SDNY 2008])(*citing Gulf Ins. Co. v. Glasbrenner*, 417

F.3d 353, 355 (2d Cir. 2005). Plaintiff has done so by bringing this case in the New York District Court which is closest to his home in Stamford, CT. That is sufficient to entitle him to his choice of forum, absent other compelling considerations not present here.

Moreover, defamation is a common-law transitory tort[4], and "[c]ommon law courts of general jurisdiction regularly adjudicate transitory tort claims between individuals over whom they exercise personal jurisdiction, wherever the tort occurred." (*Filartiga v Pena-Irala*, 630 F.2d 876, 885 [2d Cir 1980]). In this diversity case, of course, a Federal District Court acts as a state court of general jurisdiction. "Wherever, by either the common law or the statute law of a State, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties...A party legally liable [for a transitory tort] in New Jersey cannot escape that liability by going to New York. " (*Dennick v Railroad Company*, 103 US 11, 18 [1880]).

Thus, a defamatory statement is, generally speaking, actionable wherever the defendant who made the statement can be found. This is especially true in the internet age, where a defamatory statement can be read anywhere, and where a plaintiff's damaged reputation follows wherever she may be. There is no question that defendant is subject to jurisdiction in any Court in the State of New York, since she resides here and was served with process here.

In any event, improper venue is not alone a basis for outright dismissal. "The decision whether to transfer a case, or instead to dismiss it, is governed by 28 U.S.C. § 1406(a), which states

---

[4]   *See Burnham v. Superior Court*, 495 U.S. 604, 611 (1990)(*quoting* Justice Story, Commentaries on the Conflict of Laws §§ 554, 543 (1846) ("[B]y the common law[,] personal actions, being transitory, may be brought in any place, where the party defendant may be found." (internal quotation marks omitted).

that the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Determination of whether transfer serves the "interest of justice" lies within the sound discretion of the district court (*Meyer v Bd. of Regents of the Univ. of Oklahoma*, 597 F App'x 27, 28 [2d Cir 2015])(*citing Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

Among the factors informing that discretion, discussed in the cases, are the existence or absence of personal jurisdiction, whether the statute of limitations has run, and the merits of the claims. *See, e.g., Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984); *Minnette, supra*. Here, there is no question of personal jurisdiction, *i.e.*, defendant resides in New York State and was personally served. However, the one-year statute of limitations (from defendant's first making the statements) has run, and dismissal would thus deprive plaintiff of any forum for his claim. Third, we have shown that the claims clearly are meritorious, and the facts are sufficiently alleged to deny defendant's motion to dismiss.

So the only question is the convenience of the parties and witnesses, pursuant to U.S.C. § 1406(a). Here, that factor favors the case remaining in the Southern District. Plaintiff resides in Stamford, Connecticut, which is approximately 40 miles from Foley Square. He is also only about 15 miles from the White Plains Southern District Courthouse.

In considering a motion to transfer venue, the inquiry is twofold.

First, the court must determine whether the action could have been brought in the proposed transferee forum. Second, if the action could have been filed in the proposed transferee district, the court must then determine whether transfer is appropriate. Courts typically consider nine factors in this regard: (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the

-15-

relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.
*Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720, 2007 WL 2815613, at *4 (SDNY Sept. 24, 2007)(cleaned up).

*See generally Megna v Biocomp Labs. Inc*, 220 F.Supp.3d 496, 497-498 (SDNY 2016): "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case" (citations omitted). It is true that this case could have been brought either in the Northern or Western Districts of New York, but that does not necessarily entitle defendant to a change of venue, and certainly does not entitle her to an outright dismissal.

## **CONCLUSION**

This motion should be denied, and defendant directed to serve an answer to the amended complaint, with such other relief as may be just.

Dated: November 15, 2023

LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
150 East 56th Street, Suite 12B
New York, NY 10022
212.633.0123
altmanlaw@earthlink.net